**E-FILED**
Wednesday, 18 February, 2009  05:12:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LA'SHAWN WILSON,
    Plaintiff,

    vs.                            07-3061

JAMES DAVIS, et.al.,
    Defendants.

<u>SUMMARY JUDGEMENT ORDER</u>

This cause is before the court for consideration of the defendants' motions for summary judgment [d/e 29, 31, 32].

## I.  BACKGROUND

The plaintiff, a state prisoner, filed his lawsuit pursuant to 42 U.S.C. §1983 claiming his constitutional rights were violated at the Logan Correctional Center.  The plaintiff named four defendants including Optometrist James Davis, Director of Nurses Kathleen Nelson, Case Worker Michael Montcalm and Medical Director Saleh Obaisi.  The plaintiff also named an unspecified number of John Doe Defendants.[1]   The plaintiff alleges that the defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical condition.

Specifically, the plaintiff alleges that he has struggled with eye problems for years and the defendants have refused to properly respond to his complaints or properly treat his eye problems which has led his condition to deteriorate.

## II.  FACTS

The plaintiff has not directly responded to the defendants' statements of undisputed facts. The following facts are taken from the supporting affidavits, documents and deposition transcript attached to the motions for summary judgement.

The plaintiff has been incarcerated at the Logan Correctional Center since September of 2005.

Defendant Nelson says she is the Health Care Administrator at Logan Correctional Center.

---

[1]The plaintiff was advised in the merit review order that he must identify these individuals, but the plaintiff took no steps to identify or add any additional defendants. *See* April 25, 2007 Court Order.

Her job is to work with the Medical Director in coordinating and reviewing the activities within the heath care unit.   The defendant says if an inmate files a grievance concerning medical care, she reviews the medical records to determine if the inmate is receiving treatment and will often consult with the Medical Director. (Def. Mot, Ex. B, Nelson Aff, p. 1)

>    During (the plaintiff's) incarceration at Logan Correctional Center,
>    I responded to all of his concerns regarding medical treatment by
>    reviewing his medical records to ensure he was receiving treatment.
>    When appropriate, I forwarded his concerns to the prison's medical
>    staff for their review.  I had no authority to override the decisions made
>    by the medical staff and was never aware of any refusal by the medical
>    staff to provide needed treatment to (the plaintiff.) (Def. Mot, Ex. B,
>    Nelson Aff, p. 2)

Defendant Montcalm says he was serving as a grievance officer during the relevant time periods of the plaintiff's complaint.  The defendant says he is not a medical professional and an not make determinations concerning medical care.  Therefore, the defendant says he relies on the medical expertise of the plaintiff's treating physicians and had no reason to doubt their decisions. (Def. Memo, Ex C, Mont. Aff., p. 1)

Defendant Montcalm says the plaintiff did file a grievance on April 27, 2006 complaining that he needed dark glasses for his eyes.   The defendant has attached his response.   The document states that the plaintiff was seen by an optometrist on April 6, 2006.  Eye cultures were ordered and a follow-up appointment was scheduled.  However, there was no indication of a need for dark glasses.  (Def. Memo, Ex C, Mont. Aff., attached memo).

Defendant Dr. Davis says he is an optometrist who has treated the plaintiff both at Danville Correctional Center and at Logan Correctional Center.  The doctor says the fist time he treated the plaintiff was in 1999 and the last time was in early 2007.  Dr. Davis says he and Dr. Obaisi have diagnosed the plaintiff's condition as bacterial conjunctivitis and or allergic conjunctivitis on different occasions over the years.  "These are non-serious, benign medical conditions which are treatable and which in fact have been treated with topical and/or oral antibiotics and/or steroids."  (Def. Memo, Davis Aff, p. 1)   Dr. Davis also says the plaintiff is mildly nearsighted and his vision "is fully correctable with lenses that I have prescribed.  This condition of nearsightedness has not significantly changed in recent years and is merely coincidental to the physical eye related symptoms which Mr. Wilson has noted." (Def. Memo, Davis Aff, p. 1-2)

Dr. Obaisi says he is the Medical Director at Logan Correctional Center.  The defendant says when the plaintiff first entered the facility, he was seen two days later by Dr. Shute. (Def. Memo, Ex. A, Obaisi Aff, p. 2).  Since the plaintiff wore glasses, he was also scheduled to be seen

2

by an optometrist.  The plaintiff was seen by an optometrist on October 27, 2005; November 17, 2005; December 15, 2005; December 29, 2005; January 26, 2005 and February 16, 2006.

During this time, Dr. Obaisi says he was contacted by the optometrist to approve a prescription for the plaintiff's eye.   The first time Dr. Obaisi saw the plaintiff was on February 22, 2006.  The plaintiff complained of headaches "and some post-nasal discharge with irritation of eyes and headaches." (Def. Memo, Ex. A, Obaisi Aff, p. 3).   Dr. Obaisi diagnosed the plaintiff with sinusitis and medication was prescribed.

The next time Dr. Obaisi saw the plaintiff was on March 13, 2006.  The plaintiff again complained of cold like symptoms and the doctor diagnosed he plaintiff with sinusitis and severe rhinitis.   The doctor prescribed medications for the plaintiff's condition. (Def. Memo, Ex. A, Obaisi Aff, p. 3).

Dr. Obaisi saw the plaintiff again on March 30, 2006 when he was complaining of congestion and watery eyes.   The doctor examined the plaintiff and believed he might be suffering from hay fever.  Again, medication was prescribed. (Def. Memo, Ex. A, Obaisi Aff, p. 4)

The plaintiff was also seen in the Health Care Unit by other medical staff during this time for a rash, a regular asthma clinic check up and visits with the optometrist.

Dr. Obaisi saw the plaintiff again on April 28, 2006.  The plaintiff had been referred by Optometrist Dr. Davis due to the plaintiff's continued complaints of "crusting eyes" in the morning. (Def. Memo, Ex. A, Obaisi Aff, p. 4).   The doctor examined the plaintiff and reviewed his medical record.  The doctor said he needed to rule out a sinus disorder, so he ordered X-rays. The X-rays were taken at an outside hospital on May 3, 2006. (Def. Memo, Ex. A, Obaisi Aff, p. 4-5).

Dr. Obaisi met with the plaintiff on May 24, 2006 to review the X-ray results.  The plaintiff had no complaints on that date.  The doctor says the plaintiff did not suffer from a serious medical problem.  Instead, his crusty eye and other conditions was the result of his rhinitis, sinusitis or asthma problems.  "I was satisfied, based on the X-ray findings, that (the plaintiff) had no underlying serious medical problems that was causing these conditions." (Def. Memo, Ex. A, Obaisi Aff, p. 5).   The plaintiff was referred back to Dr. Davis for concerns regarding his eyes.

From June 2 to December 11, 2006, the plaintiff was seen in the health care unit nine times for a variety of issues including regular asthma clinic visits, a rash, back pain and knee pain. (Def. Memo, Ex. A, Obaisi Aff, p. 6-7).

Dr. Obaisi says on February 8, 2007, he again reviewed the plaintiff's medical records after the plaintiff had complained to others about his eye care.   The plaintiff was scheduled for a

3

doctor's appointment.   Dr. Obaisi examined the plaintiff on February 12, 2007.   The doctor said
he believed the plaintiff suffered from allergic conjunctivitis and was treated with cold
medications.

> Based on my prior work-ups of (the plaintiff) and my knowledge of his
> chart, it is my medical opinion that he has no underlying medical
> condition that is causing his problems other than sinusitis and/or
> rhinitis.   Although (the plaintiff) believes he has some underlying
> eye condition, I have not seen any evidence of this medically.
> (Def. Memo, Ex. A, Obaisi Aff, p. 8).

Dr. Obaisi also saw the plaintiff on May 11, 2007 and June 25, 2007.   The plaintiff was
examined and treatment was provided.   The doctor says he does believe the plaintiff continues to
suffer from a chronic case of rhinitis and sinusitis, but he is at "no risk of substantial harm from
these conditions" and is being treated appropriately.   (Def. Memo, Ex. A, Obaisi Aff, p. 10).   In
addition, the doctor states that he has seen no evidence that would indicate the plaintiff's vision has
deteriorated.

The plaintiff admits that no doctor has ever told him he suffers from a serious eye
condition. (Def. Memo, Plain. Depo, p. 83).   The plaintiff has also submitted documents that state
conjunctivitis is more commonly known as pinkeye. (Plain. Resp.,Ex. 1)

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c.  Any
discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue
of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts
that might affect the outcome of the suit under the governing law will properly preclude the entry
of summary judgment."  *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must
show what evidence it has that would convince a trier of fact to accept its version of events.
*Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing
summary judgment bears the burden to respond, not simply by resting on its own pleading but by
"set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).   In
order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the
material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If

[the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

The defendants argue that they are entitled to summary judgement on the plaintiff's Eighth Amendment claim. In order to show a constitutional violation, the plaintiff must pass both an objective and a subjective test. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id.* Second, the plaintiff must show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The defendants argue that the plaintiff cannot establish either prong of this test.

The Seventh Circuit has acknowledge that a "serious medical need" is far from "self-defining." *Gutierrez v Peters,* 11 F3d 1364, 1370 (7th Cir. 1997). However, the court noted that the Supreme Court clearly intended to include not only conditions that are life-threatening, but also those in which denial or delay in medical care results in needless pain and suffering. *Id.*

The defendants argue that the plaintiff suffered from pain in his eye, discharge from his eye and red and itchy eyes. The defendants say the plaintiff suffers from chronic rhinitis and sinusitis. The defendants say this chronic problem cannot always be completely cleared but can be treated as the plaintiff was by the defendants. This may be true, but even if the plaintiff did suffer from a serious medical condition, there is no evidence the defendants were deliberately indifferent to his condition.

The Eighth Amendment requires that the plaintiff "must demonstrate something approaching a total unconcern for his welfare in the face of serious risks." *Duane v. Lane,* 959 F.2d 673, 677 (7th Cir. 1992) In other words, "a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not

entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The plaintiff says he never asked for specific care, only "reasonable/adequate care." (Plain. Rep, p. 2) The plaintiff says the treatment he received was ineffective and therefore he believes he has not received a proper diagnosis of his condition.   The plaintiff says he still suffers from headaches, eye pain and blurred vision and believes he will eventually lose his eyesight.

The plaintiff has no medical evidence to support his claims other than his own suspicions. In addition, the plaintiff appears to be attempting to bring a medical malpractice claim.   "[T]he Eighth Amendment is not a vehicle for bringing claims of medical malpractice." *Snipes v. Detella,* 95 F.3d 586, 590 (1996); *see also Gutierrez v Peters,* 111 F.3d 1364, 1374 (7th Cir. 1997) ("[M]edical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim.")

The record before the court demonstrates that the defendants were not deliberately indifferent in violation of the Eighth Amendment.   The doctors provided on-going care and treatment for the plaintiff's eyes.  They also ordered additional testing to rule out mores serious medical conditions.   There is also no evidence that the non-medical defendants were deliberately indifferent to the plaintiff's condition since they knew he was receiving care and had no basis to doubt that care.  "If a prisoner is under the care of medical experts....a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v Gillis,* 372 F.3d 218 (3rd Cir. 2004).   The motions for summary judgement are granted.

**ITS IS THEREFORE ORDERED that:**

**1) The defendants' motions for summary judgement are granted pursuant to  Fed. R. Civ. P. 56. [d/e 29, 31, 32].  The clerk of the court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)c.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If**

**the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 18th day of February, 2009.


**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE